UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

A.S.A.P. LOGISTICS, LTD.,

      Plaintiff,

v.

UPS SUPPLY CHAIN SOLUTIONS, INC.,

      Defendant.

**MEMORANDUM AND ORDER**

20-CV-4553 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

 A.S.A.P. Logistics, Ltd. ("Plaintiff") brings this action against UPS Supply Chain Solutions, Inc. ("Defendant") seeking relief for (1) breach of contract, (2) breach of the duty of good faith and fair dealing, and (3) prima facie tort. Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety.

## BACKGROUND[1]

 On or about April 16, 2020, Plaintiff and Defendant entered into the Global Air Charter Services Agreement (the "Agreement"). (Am. Compl. ¶ 5, ECF No. 10.) Pursuant to the Agreement, Defendant was obligated to charter one or more aircrafts from unspecified third-party carriers, for four flights on April 25, 2020, May 1, 2020, May 5, 2020, and May 8, 2020. (*Id.*) The flights were arranged to transport Plaintiff's goods between China and the United States. (*Id.*) The purpose of chartering planes in this manner was to control the cost of freight, the quantity of goods shipped, and the delivery dates of the goods. (*Id.* ¶ 11.) Plaintiff alleges Defendant "failed and refused to timely ship" Plaintiff's goods on the dates listed in the

---

[1] The following facts are taken from the complaint and are assumed to be true for purpose of deciding the instant motion.

Agreement. (*Id.* ¶ 12.) Specifically, Plaintiff contends Defendant "bump[ed]" Plaintiff's freight and put "someone else's freight ahead" of Plaintiff's. (*Id.* ¶ 13.) As a result, Plaintiff's customers canceled orders for those goods. (*Id.* ¶ 12.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

Defendant maintains that all of Plaintiff's claims are preempted by the Montreal Convention and are thus ripe for dismissal. Plaintiff does not appear to take issue with Defendant's argument that its tort claims are pre-empted by the Montreal Convention. Accordingly, the Court's analysis on this argument focuses only on Plaintiff's breach of contract claim.

By way of background, the Montreal Convention is the successor to the Warsaw Convention, whose "cardinal purpose . . . [was] to 'achieve [international] uniformity of rules

2

governing claims arising from international air transportation.'" *El Al Israel Airlines v. Tseng*, 525 U.S. 155, 169 (1999) (alteration omitted) (quoting *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991)).  To that end, the Warsaw Convention "created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the international transportation of persons, baggage, or goods performed by aircraft." *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356–57 (2d Cir. 2002) (citation and quotation marks omitted).  This "remedial system [was] designed to protect air carriers against catastrophic, crippling liability by establishing monetary caps on awards and restricting the types of claims that may be brought against carriers." *Id.* at 357.  In 1987, the Warsaw Convention was supplanted by the Montreal Convention.  The Montreal Convention largely "unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004) (citations omitted); *see also* Dep't of Homeland Security, Letter of Submittal of Strobe Talbott (June 23, 2000) (Talbott Letter), reprinted in S. Treaty Doc. No. 106–45, 1999 WL 33292734, at *6 ("Upon entry into force, the [Montreal] Convention will take precedence over the Warsaw Convention and any of its amendments and related instruments, and as a practical matter will supersede the private inter-carrier agreements, when the State or States relevant in a particular accident are party to the new Convention.").  Notably, however, the Montreal Convention extended coverage to "contracting carriers" that arrange for a third party to transport carriage, whereas the Warsaw Convention applied only to actual carriers[2]  *See Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 363 (E.D.N.Y. 2008) ("[T]he Montreal

---

[2] In other respects, "the drafters of the Montreal Convention sought to retain as much of the existing language of the Warsaw Convention as possible so as to preserve the substantial body of existing precedent and avoid uncertainty." *New Fortune Inc. v. Apex Logistics Int'l (CN) Ltd.*, 2021 WL 5499464, at *1 (2d Cir. Nov. 24, 2021), *as amended* (Dec. 3, 2021) (citation and quotation marks omitted).  Accordingly, where consistent, the provisions of the Montreal Convention "may be analyzed in accordance with case law arising from substantively similar provisions of its predecessor[.]" *Id.*

3

Convention . . . extended liability to what it characterizes as 'contracting' carriers for harms incurred during carriage by 'actual' carriers[.]").

Nonetheless, Plaintiff persists in its contention that the Montreal Convention applies only to "air carriers," which Plaintiff defines as "those airlines that actually transport passengers or baggage." (Pl.'s Opp'n at 8–9, ECF No. 20.) According to Plaintiff, because Defendant arranged for the transport of goods between parties, Defendant is not an "air carrier" covered by the Montreal Convention. (*Id.*) Rather, Plaintiff maintains that Defendant was acting as a "charter broker" that "procur[ed] a specific amount of space on the aircraft for a flat fee" and was thus not covered by the Montreal Convention. (*Id.* at 9.) Plaintiff is wrong. That is, the Montreal Convention applies when:

> a person (hereinafter referred to as the 'contracting carrier') as a principal makes a contract of carriage governed by this Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor, and another person (hereinafter referred to as 'the actual carrier') performs, by virtue of authority from the contracting carrier, the whole or part of the carriage[.]

Art. 39, Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45, 1999 WL 33292734 ("Montreal Convention").

Plaintiff's allegations make clear that Defendant was acting as a "contracting carrier" that contracted with Plaintiff to transport Plaintiff's goods, the actual transport of which was undertaken by a third party. Specifically, Plaintiff alleges Defendant agreed to charter for Plaintiff "one or more aircraft from an unspecified third-party carrier . . . for the purpose of transporting" Plaintiff's goods. (Am. Compl. ¶ 5.) Defendant is thus plainly covered by the Montreal Convention. *See, e.g.*, *In re W. Caribbean Airways, S.A.*, 619 F. Supp. 2d 1299, 1307–08 (S.D. Fla. 2007) (finding tour operator that packages and resells air transportation under a

4

"charter contract" to be a "contracting carrier" covered by the Montreal Convention).[3] This conclusion, however, does not end the Court's inquiry. The Court must now determine whether Plaintiff's claim otherwise falls within the Montreal Convention. It does.

With respect to the "carriage of passengers, baggage, and cargo," an action for "damages, however founded, whether under [the Montreal Convention] or in contract or in tort or otherwise" may only be brought subject to "the conditions and such limits of liability as [set out] in [the Montreal Convention]." Art. 29, Montreal Convention. A Plaintiff may recover under the Montreal Convention for only the following: "1) death or bodily injury suffered by an airline passenger or the destruction, loss of or damage to [ ] baggage . . .; 2) loss or destruction of baggage or other cargo sustained during carriage by air . . .; and 3) delay in the carriage of passengers, baggage or cargo." *Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp. 2d 499, 506 (E.D.N.Y. 2010) (internal citation omitted). If an action for damages falls within one of those three provisions, the Montreal Convention provides the sole vehicle through which a plaintiff may bring its claim. *See New Fortune Inc. v. Apex Logistics Int'l (CN) Ltd.*, No. 21-262-cv, 2021 WL 5499464, at *2 (2d Cir. Nov. 24, 2021) (the Montreal Convention "preempts" any claim that "falls within its substantive scope." (quotation marks and citation omitted)).

As Defendant rightly maintains, Plaintiff's breach of contract claim is based on Defendant's "alleged delay of the shipments at issue." (Def. Mem. at 4, ECF No. 15.) Specifically, Plaintiff complains that Defendant "intentionally failed and refused to timely ship" Plaintiff's goods and that "Defendant knowingly kept bumping [P]laintiff's freight . . . and putting someone else's freight ahead." (Am. Compl. ¶¶ 12–13.) And, annexed to the complaint

---

[3] Plaintiff relies exclusively on *Pflug v. Egyptian Corp.*, 961 F.2d 26 (2d Cir. 1992), to persuade the Court otherwise. (Pl.'s Opp'n at 9, ECF No. 20.) That case is plainly inapposite because it interpreted the meaning of "carrier" in the Warsaw Convention, not the Montreal Convention. *Pflug*, 961 F.2d at 28. The Montreal Convention clearly covers entities acting in the capacity of contracting carriers, like the Defendant here.

5

is a schedule of Defendant's "late shipments." (*Id.* ¶ 15.) Conspicuously absent is any allegation in the complaint or to any attachment thereto suggesting that Plaintiff's goods were not shipped at all.[4] Thus, Plaintiff's allegations make clear that its breach of contract claim is premised on Defendant's purported performance delays. In opposition, Plaintiff ostensibly argues that its claim should be interpreted as a cause of action for non-performance of a contract and not for delay of shipment subject to the Montreal Convention.[5] (Pl.'s Opp'n at 4–8.) That is, Plaintiff contends that Defendant's "contractual obligation was not to ship plaintiff's goods, but, rather, to provide the designated amount of space" on specific flights. (*Id.* at 7.) As Plaintiff's argument goes, Defendant breached its contract with Plaintiff by not providing the designated space on the designated flights–not by delaying Plaintiff's shipments. (*Id.*)

To be clear, "[c]laims for nonperformance of a shipping contract do not fall within the scope of the Montreal Convention." *New Fortune Inc.*, 2021 WL 5499464, at *2. There is a distinction, however, between the non-performance of a contract altogether and a delay in fulfilling a contractual obligation. By way of illustration, in *Lynda v. JetBlue Airways Corp.*, an air carrier canceled a plaintiff-passenger's original flight but subsequently rebooked the passenger on a different flight free of charge. No. 20-cv-47, 2020 WL 3104069, at *1 (E.D.N.Y. June 11, 2020). The court found the plaintiff's claim sounded in delay rather than nonperformance and was thus preempted. *Id.* at *4. In contrast, in *In re Nigeria Charter Flights Contract Litigation*, the court found the plaintiff-passengers' claims were not preempted where the airline refused to transport plaintiffs altogether rather than simply delaying their travel. 520

---

[4] Indeed, Plaintiff acknowledges that Defendant ultimately shipped Plaintiff's goods. (Pl.'s Opp'n at 8.)

[5] Plaintiff's argument here consists of two sentences regurgitating language from other cases without any application of the quoted language to the facts at hand.

6

F. Supp. 2d 447, 454 (E.D.N.Y. 2007). As these two cases demonstrate, whether a claim sounds in delay or non-performance is determinative.

Plaintiff directs the Court to two cases in support of its opposition. But, each of those cases involve facts different in kind from those present here. In *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361 (S.D.N.Y. 2006), the airline "bumped" plaintiff-passengers from their booked flights and never rebooked the plaintiffs on a new flight. *Id.* at 362. Thus, the court found plaintiff-passengers' claims were not preempted by the Montreal Convention because there was non-performance of the agreement between plaintiff-passengers and the airline-defendant, rather than simple delay. *Id.* at 369. That is not the case here, where Plaintiff's goods were ultimately shipped. Similarly, in *Wolgel v. Mexican Airlines*, 821 F.2d 442 (7th Cir. 1987), the plaintiffs were "not attempting to recover for injuries caused by their delay in getting to [their final destination]." *Id.* at 445. Unlike Plaintiff's complaint here, the complaint in *Wolgel* was "based on the fact that . . . they never left the airport." *Id.*

At bottom, Plaintiff's breach of contract claim sounds in delay. A review of the contract at issue here only confirms the Court's conclusion.[6] Indeed, the plain terms of the Agreement defeat Plaintiff's argument that its breach of contract claim is based on non-performance. Section VI.C of the Agreement states that the departure times and flight routes are established by Defendant and are subject to change. (Agreement, VI.C.) That section further provides that Defendant "reserves the right without notice to route [g]oods in any way deemed appropriate[],

---

[6] In deciding a motion to dismiss for failure to state a claim, a court may consider documents attached to and incorporated by reference into the complaint, as the Agreement is here. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (When ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (quotation marks and citation omitted)); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (quotation marks and citation omitted)).

7

and/or to substitute alternative aircraft and/or [c]arrier for all flights[.]" (*Id.*) Accordingly, Plaintiff has no valid breach of contract claim for Defendant allegedly changing the aircraft or means through which Plaintiff's goods were to be transported. The only viable breach of contract claim Plaintiff could bring is one that sounds in delay. And, that claim is plainly preempted by the Montreal Convention.[7]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       September 19, 2022

/s/ LDH
L&#x251;SHANN D&#x1D07;ARCY HALL
United States District Judge

---

[7] Defendant contends that Plaintiff has failed to state a claim for implied covenant of good faith and fair dealing and for prima facie tort. (Def.'s Mem. at 11–15, ECF No. 15.) Plaintiff, represented by counsel in this matter, did not respond, in any way, to Defendant's arguments concerning these claims. "When a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, . . . especially in the case of a counseled party where a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004), *and Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2:18-cv-408, 2018 WL 4778906, at *8 (E.D.N.Y. Oct. 1, 2018) (finding that plaintiff's failure to respond to arguments raised in motion to dismiss constitutes an abandonment of those claims and collecting cases holding the same); *Javed v. Medgar Evers Coll. of the City Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017) (dismissing a series of claims for failure to respond to defendants' arguments), *aff'd*, 724 F. App'x 73 (2d Cir. 2018), *as amended* (June 12, 2018). Thus, Defendant's motion to dismiss Plaintiff's implied covenant of good faith and fair dealing and prima facie tort claims is granted. Defendant further argues that Plaintiff's implied covenant of good faith and fair dealing and prima facie tort claims raise allegations of price gouging and are thus preempted by the Airline Deregulation Act ("ADA"). (Def.'s Mem. at 10–11.) Because the Court finds that these claims have been abandoned by Plaintiff, it need not decide Defendant's argument regarding the ADA.